IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Laura C. Stockton, | ) | C/A No. 3:14-1904-TLW-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Shaw Industries Group, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Laura C. Stockton, filed a Complaint in the Court of Common Pleas in Lexington County against her former employer, Shaw Industries Group, Inc. ("Shaw"), a manufacturer of flooring products. She asserts claims of disability discrimination, harassment, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq. The defendant removed the case to federal district court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 asserting jurisdiction based upon 28 U.S.C. §§ 1331. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion to dismiss. (ECF No. 5.) Stockton filed a response in opposition (ECF No. 9), and the defendant replied (ECF No. 11). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

## BACKGROUND

Stockton, who worked at Shaw for approximately thirty years, suffers from various medical conditions. She has stomach ulcers which required surgery in April 2010, after which Stockton took a leave of absence of approximately seven months. Additionally, she sustained a wrist injury in February 2011, and also has various mental health conditions. During portions of the time period

relevant here, Stockton worked as an extrusion operator under the supervision of Lydell Eason. As an extrusion operator, Stockton worked with a team of four employees on a machine that produced packages of carpet yarn.

After Stockton's wrist injury in 2011, Shaw placed her on a light duty assignment under another supervisor for approximately eight months. She returned to work as an extrusion operator under Eason's supervision in late September of 2011. Because of her wrist pain, Stockton encountered difficulty with the part of her job that required "stringing," which required her to string four strands of yarn around a panel on the machine. Stockton had no trouble, however, with "doffing," during which she collected the packages of yarn ejected by the machine and loaded them into a cube on a cart. For a time, Eason reluctantly permitted Stockton to enlist the aid of other co-workers with regard to her stringing responsibilities. However, he allegedly discouraged other co-workers from assisting her. One day in February 2012, Eason teamed Stockton with two inexperienced workers who could not accomplish the stringing, requiring Stockton to do all of the stringing for three workers. Eason fired Stockton later that shift for the stated reason that she was smoking in a prohibited area. Stockton denies that she was smoking. At some point after Stockton's termination, Shaw allegedly restructured the extrusion operator position such that the responsibilities were divided: some employees were responsible for only doffing and were not required to do any stringing.

## DISCUSSION

**A.     Motion to Dismiss Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual



allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). A court may consider "documents attached or incorporated into the complaint" without converting a motion to dismiss into a motion for summary judgment. E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Further, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)); see also Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006) (stating that "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed") (citing Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

**B.     Stockton's Claims**

The crux of Shaw's argument is that Stockton's claims fail as a matter of law because the allegations in the Amended Complaint establish that Shaw accommodated Stockton's alleged disabilities on numerous occasions and never denied her any requested accommodation. Further, Shaw contends, Stockton's own allegations show that she could not perform an essential function



of her job—*i.e.*, stringing. Accordingly, Shaw argues, she cannot show that she meets the statutory definition of a "qualified individual."

The ADA prohibits employment discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To resolve whether a person is a qualified individual, a court must consider whether that person is able to perform the essential functions of the job in question, and if not, whether the person could do the job with reasonable accommodation. Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) (citing Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir. 1993)). Further, under the ADA, a "disability" includes:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).

To establish a *prima facie* case against her employer for failure to accommodate, a plaintiff must show: " '(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations.' " Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quoting Mitchell v. Washingtonville Ctr. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)); see also Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). To establish a prima facie case of discriminatory discharge based upon a disability, a plaintiff must show: (1) that she was a disabled

individual within the meaning of the ADA; (2) that she was discharged; (3) that she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) that the circumstances of her discharge raise a reasonable inference of unlawful discrimination. See 42 U.S.C. § 12112(a); see also Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (citing Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 n.9 (4th Cir. 2004)); Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696 (4th Cir. 2001).

Here, Stockton cannot meet either of these *prima facie* tests because she cannot show that she meets the ADA's definition of a "qualified individual." Stockton concedes she had difficulty stringing and that it caused her pain. (Am. Compl. ¶ 49, ECF No. 1-1 at 19.) Nor has she refuted Shaw's showing that stringing was an essential function of the job of extrusion operator at the time Stockton alleges she suffered discrimination.[1] See Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 470 n.3 (4th Cir. 2002) (stating that " 'the date of an adverse employment decision is the relevant date for determining whether a plaintiff is a 'qualified individual with a disability' ") (quoting EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000)).  Case law is clear that the ADA does not require an employer to re-allocate essential functions of a job or create new positions for a disabled employee. See, e.g., Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 323 (4th Cir. Apr. 20, 2011) (stating that "the ADA does not require an employer to reallocate essential job functions"); Lamb v. Qualex, Inc., 33 F. App'x 49, 59 (4th Cir. Apr. 3, 2002) ("The ADA does not, however, require an employer to create a new position as an accommodation to a disabled employee.").

---

[1] Although Stockton argues in her memorandum that designated paragraphs in her Complaint "discredit Shaw's conclusions" in this regard, upon review of those paragraphs, the court finds nothing in them refuting Shaw's showing that Stockton could not string.



Stockton's harassment claim also fails, as the *prima facie* test similarly requires that a plaintiff establish that she is a "qualified person" within the meaning of the ADA. See Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001). Moreover, her allegations against Eason do not rise to the requisite standard to establish actionable harassment. See id. at 178 (stating that the harassment must be both subjectively and objectively hostile and "[f]actors to be considered with respect to the objective component include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance'") (internal quotation marks and citation omitted); Wisz v. Wells Fargo, Civil Action No. GLR-12-2957, 2014 WL 3051320, at *5 (D. Md. July 2, 2014) (holding that testimony from the plaintiff that she felt she was being harassed by Bender because "she would make smart remarks all the time" and "then [she was] constantly turning around and . . . writing me up for anything . . ." was not sufficiently severe and pervasive to survive summary judgment); Woods v. Boeing Co., No. 2:11-cv-02855-RMG, 2013 WL 5308721, at *8 (D.S.C. Sept. 19, 2013) (holding that "expressions of annoyance and impatience are not sufficiently severe or pervasive [so] as to alter a term, condition, or privilege of employment") (internal quotation marks and citation omitted); cf. Fox, 247 F.3d at 179 (holding that evidence that supervisors constantly berated and harassed the plaintiff and other disabled workers at least weekly with vulgar and profane language (such as "handicapped MF" and "hospital people"), encouraged other employees to ostracize disabled workers, and required the plaintiff to perform tasks beyond his medical restrictions was sufficient evidence for a jury to find the plaintiff was subjected to harassment based on his disability that was sufficiently severe or pervasive to create a hostile work environment).

Finally, Stockton's Amended Complaint fails to allege facts asserting a plausible claim of retaliation. See Rhoads v. FDIC, 257 F.3d 373, 392 (4th Cir. 2001) (stating to establish a *prima facie* claim for retaliation under the ADA, a plaintiff must show: (1) that she engaged in a protected activity, (2) her employer acted adversely against her, and (3) the protected activity was causally connected to the employer's adverse action). Her allegations show that she previously requested accommodations in April 2010, February 2011, and September 2011. Most of the alleged retaliatory acts occurred many months or even a year later, and she has alleged no other facts that tend to show a causal connection between her protected activity and the alleged retaliatory acts. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (noting that to establish a causal connection based on temporal proximity alone, the time between the employer's knowledge of the protected activity and the adverse employment action must be "very close" and acknowledging cases holding a three to four month period to be insufficient); Pascual v. Lowe's Home Centers, Inc., 193 F. App'x 229 (4th Cir. 2006) (*per curiam*) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the termination of the plaintiff's employment); see also Jones v. HCA, Civil Action No. 3:13cv714, 2014 WL 1603739, at *10 (E.D. Va. Apr. 21, 2014) (dismissing an ADA retaliation claim pursuant to Rule 12(b)(6) where the plaintiff failed to adequately plead "a causal link between his request for an accommodation, which was originally granted, and any adverse action"); Ramirez-Rodriguez v. Wal-Mart Stores East, L.P., Nos. 5:12-CV-585-BO, 5:13-CV-442-BO, 2014 WL 1365670, at *4 (E.D.N.C. Apr. 4, 2014) (concluding that a plaintiff failed to allege sufficient facts to support a claim for retaliation under the ADA where it is not apparent from the plaintiff's complaint whether the party responsible for the adverse action had any knowledge of the plaintiff's protected activities nor is there any temporal proximity between the plaintiff's protected activity in



February 2011 and the adverse action in February 2012).  Although she argues that Eason unjustly reprimanded her twice within four months after her return from temporary light duty following her wrist injury, many courts have recognized that simple reprimands or oral counseling, without more, cannot be considered to be materially adverse actions, as they would not dissuade a reasonable worker from making or supporting a charge of discrimination.  See, e.g., Rease v. Zax, Inc., C/A No. 3:07-3601, 2009 WL 2998977, at *7 (D.S.C. Sept. 17, 2009) (unpublished) (holding that warning notices and a poor performance review were insufficient to constitute materially adverse actions under the Burlington standard); Washington v. Norton, No. 3:04CV1042007, WL 1417290, *4 (N.D. W. Va. May 11, 2007) (stating that reprimanding an employee for unprofessional conduct or warning an employee about poor performance was insufficient to constitute materially adverse actions under the Burlington standard); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (stating to demonstrate adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination' ") (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  Similarly, her allegation that Eason "followed" her fails to meet the applicable standard.

**RECOMMENDATION**

Based on the foregoing, the court recommends that the Amended Complaint be dismissed without prejudice.[2]  (ECF No. 5.)

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

November 13, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[2] Shaw requests in its motion that the Amended Complaint be dismissed *with* prejudice. However, the court observes that this matter was removed from state court and that the Iqbal/Twombly standard would not have governed when the Amended Complaint was drafted and filed in state court.  Accordingly, it is conceivable that the plaintiff can present a proposed amended pleading in connection with a properly supported motion to amend that cures the deficiencies outlined herein.  The court therefore concludes that dismissal with prejudice would not be appropriate.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).